CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 2 3 2007

JOHN F. CORCORAN, CLERK
BY: S. XXXXX
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |  |
|---|---|---|
| THE ESTATE OF HEZEKIAH HARVEY, by and through his legal representative, ALICE ANN DENT, ADMINISTRATOR,<br>    Plaintiff,<br><br>v.<br><br>ROANOKE CITY SHERIFF'S OFFICE, <u>et al.</u>,<br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 7:06CV00603<br><br><u>MEMORANDUM OPINION</u><br><br>By: Hon. Glen E. Conrad<br>United States District Judge |

The Estate of Hezekiah Harvey, by and through Harvey's legal representative, Alice Ann Dent ("the plaintiff"), filed this civil rights action against the Roanoke City Sheriff's Office; the Roanoke City Sheriff, Octavia L. Johnson; two of the Sheriff's deputies, Neil Moses and Clinton Phillips; the City of Roanoke; and other John and Jane Does.[1] The case is presently before the court on the motion to dismiss filed by the City of Roanoke and the motion to dismiss filed by the Sheriff's Office, Sheriff Johnson, Deputy Moses, and Deputy Phillips (collectively, the "Sheriff's Office defendants"). For the following reasons, the court will grant the City of Roanoke's motion to dismiss, and the motion to dismiss filed by the Sheriff's Office defendants will be granted in part and denied in part.

## BACKGROUND

The following facts, which are taken from the plaintiff's complaint, are accepted as true for purposes of the defendants' motions. <u>See</u> Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-218 (4th Cir. 1994).

---

[1] All of the individual defendants are sued in their official and individual capacities.

On or about February 4, 2006, Harvey was arrested and charged with malicious wounding following a domestic dispute with his girlfriend. On February 5, 2006, the plaintiff, Harvey's sister, called the Roanoke City Jail to inform employees of Harvey's preexisting medical conditions, namely congestive heart failure and cirrhosis, and his medication requirements. The following day, the plaintiff called the jail again and offered to deliver Harvey's medications to him. At that time, the plaintiff was informed that no one would be permitted to see Harvey. On February 7, 2006, the plaintiff spoke with one of the jail's nurses via telephone. The nurse assured the plaintiff that Harvey would receive the medical attention that he required.

Between February 5, 2007 and February 7, 2007, Harvey allegedly became unruly, psychotic, and disruptive as a result of not receiving proper medications. During that time, Harvey was beaten, subdued, and shackled with his hands and feet behind his back. Additionally, the defendant deputies and other unknown defendants restrained Harvey "naked and in a prone position with a blanket wrapped tightly around his head." (Compl. at 11). The restraints on Harvey's movement led to a condition known as "excited delirium," and the blanket deprived Harvey of proper oxygen. (Compl. at 2).

On or about February 7, 2007, Carilion Transport, a medical transport unit lacking emergency medical treatment personnel, was called to transport Harvey to Carilion Roanoke Memorial Hospital. When Carilion Transport arrived at the jail, Harvey was restrained in a face-down position with chains and shackles holding his arms and legs behind him, and his torso and head were wrapped with a blanket. Carilion Transport personnel were advised that Harvey was "possibly 'coming down from heroin.'" (Compl. at 8).

2

None of the members of the jail's medical staff accompanied Harvey to the hospital. Instead, Harvey was accompanied by two of the Sheriff's deputies. One of the deputies held Harvey face-down on the stretcher until an emergency room physician directed the deputy to move. At that time, emergency room personnel discovered that Harvey was not breathing and that he was in a state of cardiac arrest. Although Harvey was subsequently resuscitated and stabilized, he exhibited no pattern of brain activity.

When Harvey's family members arrived at the hospital on February 8, 2006, after learning that Harvey had been hospitalized, they were told that Harvey was not there and that the Sheriff's Office wanted no information released to Harvey's family members. Hospital personnel eventually advised Harvey's family members to go to the 6th or 7th floor of the hospital. Upon reaching the 7th floor, family members were advised that Harvey had been declared brain dead.

A doctor asked family members if Harvey had been beaten or injured in an automobile accident. Family members were advised that Harvey had cuts, abrasions, and bruises on his body, and that a hemorrhage was present in Harvey's temporalis muscle.

On the morning of February 9, 2006, after conferring with doctors and medical personnel, family members requested that Harvey be removed from life support. Harvey was pronounced dead that evening. The autopsy report listed the cause of death as "'Excited delirium due to chronic schizophrenia CC: Congestive cardiomyopathy.'" (Compl. at 9). Postmortem toxicology tests revealed that an anesthetic sedative drug was present in Harvey's system at a non-toxic level. No other drugs were present.

3

The plaintiff filed suit against the defendants on October 10, 2006. In the first count of the complaint, the plaintiff asserts several constitutional claims under 42 U.S.C. § 1983. Specifically, the plaintiff alleges that the defendants violated Harvey's Eighth Amendment right against cruel and unusual punishment by using excessive force against him and by acting with deliberate indifference to his serious medical needs. The plaintiff also alleges that the defendants violated Harvey's rights to due process and equal protection under the Fourteenth Amendment. In her second and third counts, the plaintiff asserts conspiracy claims under 42 U.S.C. §§ 1985 and 1986. In her fourth count, the plaintiff alleges that the Sheriff's Office, Sheriff Johnson, and the City failed to adequately train and supervise deputies. In her fifth count, the plaintiff asserts a claim for negligent hiring and retention. In addition to the aforementioned federal claims, the plaintiff asserts the following claims under state law: battery, assault, civil conspiracy, breach of a non-delegable fiduciary duty, outrageous conduct, intentional infliction of emotional distress, and wrongful death. The plaintiff seeks declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys' fees.

## DISCUSSION

The City of Roanoke and the Sheriff's Office defendants have now moved to dismiss the complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; [such motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (internal citations omitted). When drafting a complaint, the Federal Rules do not require a claimant to set out in detail the facts upon which her claims are based. Conley v.

4

Gibson, 355 U.S. 41, 47 (1957). Instead, the Rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). Thus, a Rule 12(b)(6) motion "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of [her] claims entitling [her] to relief." Migdal v. Rowe Price-Fleming Int'l Inc., 248 F.3d 321, 325 (4th Cir. 2001).

### The City of Roanoke

The City of Roanoke has moved to dismiss all of the plaintiff's claims against it on the basis that the City cannot be held liable for the acts of the Sheriff or the Sheriff's deputies. The court agrees with the City. Under Virginia law, the Sheriff is a constitutional officer who serves independent of the city or county government in which she is employed. Sherman v. City of Richmond, 543 F. Supp. 447, 449 (E.D. Va. 1982) (citing Hilton v. Amburgey, 198 Va. 727, 729, 96 S.E.2d 151, 152 (Va. 1957)). As a result of this independence, the City of Roanoke does not have any control over the actions of the Sheriff or her deputies and, thus, is not responsible for their actions. Id.

In response to the City's motion to dismiss, the plaintiff argues that the City is exposed to municipal liability under Monell v. Department of Social Servs., 436 U.S. 658 (1978). However, this argument is without merit. Under Monell, a municipality is only liable for the constitutional torts of an officer if the tort was committed pursuant to a municipal custom or policy. In Virginia, the Sheriff, not the City of Roanoke, is responsible for setting policies for the Sheriff's

5

Office.  See Strickler v. Waters, 989 F.2d 1375, 1390 (4th Cir. 1993); Himple v. Moore, 673 F.

Supp. 758, 759 (E.D. Va. 1987).  Thus, while there are cases in which a local government entity

may be held responsible for an officer's constitutional torts, the City of Roanoke is not a proper

defendant in this case.  Accordingly, the court will grant the City's motion to dismiss.

## The Sheriff's Office Defendants

A.    Eleventh Amendment Immunity

The court agrees with the Sheriff's Office defendants that the plaintiff's federal claims

against the Sheriff and the defendant deputies in their official capacities, as well as the plaintiff's

federal claims against the Sheriff's Office, are barred by the Eleventh Amendment.  In Virginia,

suits against a Sheriff or her deputies in their official capacities and suits against a Sheriff's

Office are suits against the state.  See Harris v. Hayter, 970 F. Supp. 500, 502 (W.D. Va. 1997);

Blankenship v. Warren County, 931 F. Supp. 447, 449 (W.D. Va. 1996).  The Eleventh

Amendment bars actions for monetary damages against a state by its own citizens, unless

Congress has validly abrogated that immunity or the state, itself, has consented to suit.  Edelman

v. Jordan, 415 U.S. 651, 662-663 (1974).  Because there is no indication of any abrogation or

waiver of immunity in this case, the plaintiff's federal claims against the Sheriff and the

defendant deputies in their official capacities, as well as the plaintiff's federal claims against the

Sheriff's Office, are barred by the Eleventh Amendment.[2]  Thus, the court will grant the Sheriff's

---

[2]The court recognizes that the plaintiff's complaint asserts claims for declaratory and injunctive
relief, in addition to monetary damages, and that such claims are not ordinarily barred by the Eleventh
Amendment.  See Lytle v. Griffith, 240 F.3d 404, 408 (4th Cir. 2001) (discussing Ex Parte Young, 209
U.S. 123, 159-160 (1908)).  However, in this case, the plaintiff's claims for declaratory and injunctive
relief are clearly moot as a result of Harvey's death.  See Bowman v. Corr. Corp. of Am., 350 F.3d 537,
549 (6th Cir. 2003) (holding that any claim for injunctive relief asserted on behalf of a deceased inmate
was rendered moot by the inmate's death); Copsey v. Swearingen, 36 F.3d 1336, 1339 (5th Cir. 1994)
(holding that claims for injunctive and declaratory relief were rendered mooted by the plaintiff's death).
Therefore, the court will grant the Sheriff's Office defendants' motion as to these claims.

6

Office defendants' motion to dismiss with respect to these claims.

B.    Claims under 42 U.S.C. §§ 1985 and 1986

The court will also grant the Sheriff's Office defendants' motion to dismiss as to the plaintiff's claims against the Sheriff and the defendant deputies in their individual capacities under 42 U.S.C. §§ 1985 and 1986, because the plaintiff has failed to state a claim under either statute. Section 1985(3) prohibits two or more persons from conspiring to deprive another of equal protection of the laws. See 42 U.S.C. § 1985(3). A properly asserted claim under this section must contain allegations of a "specific class-based, invidiously discriminatory animus." Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). Because the plaintiff has failed to allege facts supporting the existence of such animus on the part of the defendants, the plaintiff's conspiracy claim under § 1985 is subject to dismissal. Moreover, because the plaintiff has failed to state a claim under § 1985, her claim under § 1986 must also be dismissed. See Trerice v. Summons, 755 F.2d 1081, 1085 (4th Cir. 1985) ("A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985.").

C.    Claims under 42 U.S.C. § 1983

The plaintiff asserts several claims against the Sheriff and the defendant deputies in their individual capacities under 42 U.S.C. § 1983. Section 1983 imposes civil liability on any person acting under color of state law to deprive another person of rights and privileges secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. In this case, the plaintiff alleges that the Sheriff and the defendant deputies violated Harvey's equal protection and due process rights under the Fourteenth Amendment, as well as his Eighth Amendment right to be free from cruel and unusual punishment, by acting with deliberate indifference to Harvey's serious medical

7

needs and by using excessive force against him.[3]

1.  Equal Protection Claim

The court agrees with the Sheriff's Office defendants that the plaintiff has failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment. Although the complaint refers to Harvey's "right to equal protection of the laws," the plaintiff does not allege facts to support any of the elements of an equal protection claim. To state an equal protection claim, a plaintiff must allege facts which show that Harvey was treated differently from others with whom he was similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Veney v. Wyche, 293 F.3d 726, 731 (4th Cir. 2002); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In this case, the plaintiff's complaint fails to make either showing. Accordingly, the court will grant the defendants' motion to dismiss as to this claim.

2.  Due Process Claims Against the Defendant Deputies

Although the Sheriff's Office defendants also argue that the plaintiff has failed to allege sufficient facts to state a due process claim against the defendant deputies, the court disagrees. The plaintiff first alleges that the deputies violated his due process rights by acting with deliberate indifference to his serious medical needs. In order to state such a claim, a plaintiff must allege facts which show that the "the defendants actually knew of and disregarded a

---

[3]Based on the dates alleged in the complaint, it appears that Harvey was a pretrial detainee at the time of the events in question. Thus, the Eighth Amendment does not apply. Instead, the plaintiff's claims pertaining to Harvey's care and treatment arise solely under the Due Process Clause of the Fourteenth Amendment. See Riley v. Dorton, 115 F.3d 1159, 1166 (4th Cir. 1997). Nonetheless, a pretrial detainee's due process rights are "co-extensive" with a convicted prisoner's rights under the Eighth Amendment. Turner v. Kight, 121 Fed. Appx. 9, 13 (4th Cir. 2005) (citing Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992)).

8

substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-576 (4th Cir. 2001).

Having reviewed the plaintiff's complaint, the court concludes that the following allegations sufficiently allege a claim for deliberate indifference on the part of the defendant deputies in their individual capacities: (1) while being deprived of necessary medications, Harvey was restrained naked and in a prone position by the defendant deputies; (2) the deputies wrapped a blanket tightly around Harvey's head; (3) the restraints led to a condition known as excited delirium; (4) the blanket deprived Harvey of proper oxygen; and (5) the deputies' deliberate actions ultimately resulted in Harvey being subjected to extreme pain and suffering. Accordingly, the court will deny the Sheriff's Office defendants' motion as to this claim.

The plaintiff also alleges that the defendant deputies used excessive force against Harvey. To succeed on a claim of excessive force under the Fourteenth Amendment, the plaintiff must show that the deputies' actions "amounted to punishment," and that "the injury resulting from the officers' actions was more than de minimis." Robles v. Prince George's County, 302 F.3d 262, 269 (4th Cir. 2002) (internal citations omitted). Applying these principles to the aforementioned allegations, the court concludes that the plaintiff has also stated a claim for excessive force against the defendant deputies in their individual capacities. Thus, the court will deny the Sheriff's Office defendants' motion as to this claim.

### 3.    Sheriff Johnson's Liability

The court also concludes that the plaintiff has alleged sufficient facts to state a claim against Sheriff Johnson in her individual capacity. When a supervisory official is not personally

involved in the alleged wrongdoing, she may nonetheless be liable under § 1983 if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] was responsible." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142 (4th Cir. 1982). Here, the plaintiff alleges that policies, practices, and customs adopted by Sheriff Johnson, as policymaker for the Roanoke City Sheriff's Office, resulted in the deprivation of Harvey's constitutional rights. Specifically, the plaintiff alleges that Sheriff Johnson was the "government official whose edicts or acts may fairly be said to represent official policy, practices, customs or regulations" of the Sheriff's Office, that the defendant deputies and other unknown defendants acted pursuant to those policies, practices, and customs, and that those policies, practices, and customs resulted in and caused Harvey's death. (Compl. at 11). Given the liberal requirements of notice pleading, the plaintiff's allegations clearly state a claim for relief against Sheriff Johnson.

The plaintiff also alleges that Sheriff Johnson failed to adequately train and supervise her deputies. To impose liability on Sheriff Johnson for failure to train her subordinates, the plaintiff must plead and prove that the subordinates actually violated Harvey's constitutional rights; that Sheriff Johnson failed to properly train the subordinates, illustrating a "deliberate indifference" to the rights of the persons with whom the subordinates came into contact; and that this failure to train actually caused the subordinates to violate Harvey's constitutional rights. City of Canton v. Harris, 489 U.S. 378, 388-92 (1989); see also Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000).

In this case, the plaintiff alleges that Sheriff Johnson failed to adequately train and supervise the deputies working at the jail on the dates in question, and that Harvey's

10

constitutional rights were violated "as a direct and proximate consequence" of the inadequate training and supervision. (Compl. at 14). Additionally, the plaintiff alleges that if the deputies had been properly trained and supervised, "Harvey's death and the corresponding deprivation of his civil rights, privileges, and immunities would not have happened." (Compl. at 14-15). Viewed in the light most favorable to the plaintiff, the court concludes that her allegations of constitutionally inadequate training and supervision are also sufficient to survive the defendants' motion to dismiss.

In addition to the aforementioned theories of liability, the plaintiff asserts a claim for negligent hiring against Sheriff Johnson in her individual capacity. However, such claim clearly fails as a matter of law. It is well established that mere negligence is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 336 (1986); Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 407 (1997). Accordingly, the court will grant the Sheriff's Office defendants' motion as to this claim.

### 4.    Qualified Immunity

The Sheriff's Office defendants also seek dismissal of the plaintiff's due process claims against Sheriff Johnson and the defendant deputies in their individual capacities on the basis that they are entitled to qualified immunity. Government officials are entitled to qualified immunity from civil liability for performing discretionary functions only insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a government official is entitled to qualified immunity, the court must "(1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established

11

at the time of the incident, and (3) evaluate whether a reasonable official would have understood that the conduct at issue violated the clearly established right." Henderson v. Simms, 223 F.3d 267, 271 (4th Cir. 2000).

In this case, the constitutional right at issue is the right to due process under the Fourteenth Amendment. It has been clearly established for some time that the use of excessive force upon a pretrial detainee violates this constitutional right. See Graham v. Connor, 490 U.S. 386, 395 (1989). Likewise, it is clearly established that the Fourteenth Amendment prohibits jail officials from acting with deliberate indifference to a pretrial detainee's serious medical needs. See Hill v. Nicodemus, 979 F.2d 987, 990 (4th Cir. 1992). Assuming that the plaintiff is able to prove the allegations in her complaint, the court concludes that reasonable officials in the positions of the Sheriff and the defendant deputies would have understood that their actions or omissions violated Harvey's due process rights. Therefore, qualified immunity is inappropriate at this stage of the litigation.

D.     State Law Claims

The plaintiff's complaint also asserts the following claims under state tort law: battery, assault, civil conspiracy, breach of a non-delegable fiduciary duty, outrageous conduct, intentional infliction of emotional distress, and wrongful death. The court agrees with the Sheriff's Office defendants that the plaintiff's claim for outrageous conduct must be dismissed. The plaintiff has not cited, and the court is unable to locate, any authority to support the proposition that an independent cause of action for outrageous conduct exists under Virginia law. See Cerick v. Central Fidelity Bank, 19 Va. Cir. 1, 3 (Va. Cir. Ct. 1989) ("The Court's review of

12

Virginia tort law fails to bring to its attention any cases which have decided a cause of action based on the 'tort of outrage.'"). However, with respect to the remaining state law claims, the court concludes that the plaintiff has alleged sufficient facts to permit the claims to go forward at this stage of the litigation. The defendants' contentions regarding the lack of factual basis for the remaining claims can be considered on a motion for summary judgment or at trial.[4]

The Sheriff's Office defendants also argue that they are entitled to sovereign immunity with respect to the plaintiff's state law claims. However, it is well established that state officials are not entitled to the protection of sovereign immunity when they are accused of an intentional tort or acts constituting gross negligence. See Coppage v. Mann, 906 F. Supp. 1025, 1047 (E.D. Va. 1995); Burnham v. West, 681 F. Supp. 1169, 1172 (E.D. Va. 1988); Nat'l R.R. v. Catlett Volunteer Fire Co., Inc., 241 Va. 402, 404 S.E.2d 216, 219 n.2 (Va. 1991); Tomlin v. McKenzie, 251 Va. 478, 468 S.E.2d 882, 884 (Va. 1996); Fox v. Deese, 234 Va. 412, 362 S.E.2d 699, 706 (Va. 1987); Lawhorne v. Harlan, 214 Va. 405, 200 S.E.2d 569, 572 (Va. 1973); Elder v. Holland, 208 Va. 15, 155 S.E.2d 369, 372-373 (Va. 1967). Because the plaintiff has alleged intentional and/or grossly negligent acts on the part of the Sheriff's Office defendants, the court is unable to conclude that they are entitled to sovereign immunity at this stage of the litigation. Accordingly, the court will deny the defendants' motion to dismiss with respect to this issue.

---

[4]The court notes that it appears that the plaintiff's state law claims are filed pursuant to Virginia's wrongful death statute, Virginia Code § 8.01-50, and the state's survival statute, Virginia Code § 8.02-25. The court recognizes that "the wrongful death statute [is] the exclusive statement of the grievances that Virginia will recognize when a tort victim dies of [his] injuries." El-Meswari v. Washington Gas Light Co., 785 F.2d 483, 491 (4th Cir. 1986). However, at this stage of the litigation, where the plaintiff alleges both fatal and non-fatal injuries as a result of the defendants' actions, the court will allow all of the plaintiff's state law claims to go forward, with the exception of the plaintiff's claim for outrageous conduct.

13

## CONCLUSION

For the reasons stated, the City of Roanoke's motion to dismiss will be granted, and all of the plaintiff's claims against the City will be dismissed. In addition, the motion to dismiss filed by the Sheriff's Office defendants will be granted in part and denied in part. Specifically, the motion to dismiss will be granted with respect to the plaintiff's claims for declaratory and injunctive relief; the plaintiff's federal claims against the Sheriff's Office; the plaintiff's federal claims against the Sheriff and the defendant deputies in their official capacities; the plaintiff's claims under 42 U.S.C. §§ 1985 and 1986 against the Sheriff and the defendant deputies in their individual capacities; the plaintiff's equal protection claim against the Sheriff and the defendant deputies in their individual capacities; the plaintiff's negligent hiring claim against the Sheriff in her individual capacity; and the plaintiff's state law claim for outrageous conduct. The motion to dismiss will be denied with respect to the remaining claims.

The Clerk is directed to send certified copies of this opinion and the accompanying order to all counsel of record.

**ENTER**: This _23rd_ day of February, 2007.

_[signature]_

United States District Judge

14